UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MELES ABREHA FETWI,

                Petitioner,

v.

KEVIN RAYCRAFT,

                Respondent.

_____/

Case No. 1:26-cv-2075

Honorable Paul L. Maloney

**OPINION**

Petitioner, a United States Immigration and Customs Enforcement (ICE) detainee, initiated this action by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Pet., ECF No. 1.) For the following reasons, the Court will grant the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

**Discussion**

**I.     Procedural History**

The habeas petition challenges the lawfulness of Petitioner's current detention and asks the Court to, *inter alia*, issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ordering Respondents to release Petitioner. (Pet., ECF No. 1, PageID.7.) In an order entered on July 17, 2026, the Court directed Respondents to show cause, within three business days, why the writ of habeas corpus and other relief requested by Petitioner should not be granted. (Order, ECF No. 4.) Respondents filed their response on July 22, 2026, (ECF No. 5.) Petitioner filed a reply on July 28, 2026. (ECF No. 10.)

## II.      Factual Background

Petitioner is a native and citizen of Eritrea who was admitted to the United States in 2009 as a refugee. (Anderson Decl. ¶ 4, ECF No. 5-1, PageID.29.) In 2011, USCIS adjusted Petitioner's status to a lawful permanent resident. (*Id.*, ¶ 6.)

On November 15, 2022, ICE agents arrested Petitioner and the Department of Homeland Security (DHS) issued Petitioner a Form I-862, Notice to Appear (NTA), charging Petitioner with removability under 8 U.S.C. §§ 1227(a)(2)(A)(iii) and 1227(a)(2)(C) of the Immigration and Nationality Act (INA), following various criminal convictions from 2013–2021. (*Id.*, ¶¶ 8–17, PageID.30–31.) On February 16, 2023, an Immigration Judge in the Detroit Immigration Court ordered Petitioner removed to Eritrea. (*Id.*, ¶ 21, PageID.31.) Petitioner did not appeal the order of removal, making Petitioner's order of removal administratively final on March 20, 2023. (*Id.*)[1] On August 16, 2023, ICE released Petitioner on an Order of Supervision. (*Id.*, ¶ 24, PageID.33.)

On January 10, 2026, ICE agents arrested Petitioner. (*Id.*, ¶ 27, PageID.34.) ICE served Petitioner with a Notice of Revocation of Release on February 26, 2026, (Notice of Revocation of Release, ECF No. 5-2, PageID.39) and provided him with an informal interview concerning the revocation of his release on February 27, 2026 (Officer Statement of Informal Interview, ECF No. 5-2, PageID.40.)

As of May 12, 2026, ICE had submitted travel document request paperwork to Eritrea, which remains pending. (Anderson Decl. ¶ 32, ECF No. 5-1, PageID.35.)

---

[1] For the purposes of 8 U.S.C. § 1231(a), a removal order "shall become final upon the earlier of (i) a determination by the Board of Immigration Appeals (BIA) affirming such an order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals." 8 U.S.C. § 1101(a)(47)(B). Petitioner had 30 days from which to file an appeal of the February 16, 2023, order of removal, 8 CFR § 1003.38; however, March 18, 2023, was a Saturday.

### III.    Habeas Corpus Legal Standard

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. This includes challenges by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025).

### IV.    Merits Discussion

Petitioner contends that Respondent has unlawfully detained Petitioner in violation of the INA and Petitioner's Fifth Amendment rights. Specifically, Petitioner claims that Respondent did not properly provide Petitioner with pre-deprivation notice of the revocation of his release and a hearing. (Pet., ECF No. 1, PageID.6–7.) Respondents, however, contend that Petitioner is properly detained under 8 U.S.C. § 1231(a), and that ICE property revoked Petitioner's supervised release in order to effectuate Petitioner's final order of removal, entered on March 20, 2023. (Resp., ECF No. 5, PageID.15.)

Ordinarily, when an individual is issued a final order of removal, that person must be removed from the country within 90 days. 8 U.S.C. § 1231(a)(1)(A). Except for situations where the person is "detained or confined" in a case other than the "immigration process," or where a court orders a stay of removal, the 90-day removal period begins when the removal order becomes administratively final. *Id.* § 1231(a)(1)(B). Here, it is undisputed that Petitioner's order of removal is administratively final.

Under § 1231(a)(6), the government is permitted to continue to detain individuals who are deemed "inadmissible" beyond the removal period, or it may release them under specified terms

3

of supervision. *Id.* § 1231(a)(6). However, once that time passes and after "removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute," and the noncitizen must be released. *Zadvydas v. Davis*, 533 U.S. 678, 699–700 (2001); *see* 28 U.S.C. § 1231(a)(3) ("If the alien does not leave or is not removed within the [90-day] removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General.").

Consistent with § 1231(a)(6), Petitioner was released from detention with an Order of Supervision on August 16, 2023. (Anderson Decl. ¶ 24, ECF No. 5-1, PageID.33.) The government has promulgated regulations in the Code of Federal Regulations concerning the release of noncitizens who are subject to a final removal order. *See* 8 C.F.R. § 241.4; 8 C.F.R. § 241.13. These regulations—specifically, §§ 241.4 and 241.13—also govern the revocation of such noncitizens' release. The agency must comply with the applicable regulatory and statutory requirements. *See, e.g., United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954), *superseded in part by statute on other grounds as recognized in Dept. of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 135 (2020) ("[A]s long as the regulations remain operative, the Attorney General denies himself the right to sidestep" those regulations.). As the Sixth Circuit Court of Appeals has explained:

> "The Supreme Court has long recognized that a federal agency is obliged to abide by the regulations it promulgates. *See Vitarelli v. Seaton*, 359 U.S. 535, 545 (1959); *Service v. Dulles*, 354 U.S. 363, 372 (1957); *Accardi v. Shaughnessy*, 347 U.S. 260, 267 (1954). An agency's failure to follow its own regulations 'tends to cause unjust discrimination and deny adequate notice' and consequently may result in a violation of an individual's constitutional right to due process. Where a prescribed procedure is intended to protect the interests of a party before the agency, 'even though generous beyond the requirements that bind such agency, that procedure must be scrupulously observed.' *Vitarelli*, 359 U.S. at 547 (Frankfurter, J., concurring); *see also* Note, *Violations by Agencies of Their Own Regulations*, 87 Harv. L.Rev. 629, 630 (1974) (observing that agency violations of regulations promulgated to provide parties with procedural safeguards generally have been invalidated by courts)."

*Wilson v. Comm'r Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004) (quoting *Sameena, Inc. v. United States Air Force*, 147 F.3d 1148, 1153 (9th Cir.1998)).

8 C.F.R. § 241.4 generally governs the continued detention of noncitizens under a final order of removal. Section 241.4(l)(2) provides:

> The Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to Service custody an alien previously approved for release under the procedures in this section. A district director may also revoke release of an alien when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner. Release may be revoked in the exercise of discretion when, in the opinion of the revoking official:
>
> (i) The purposes of release have been served;
>
> (ii) The alien violates any condition of release;
>
> (iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or
>
> (iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

8 C.F.R. § 241.4.

Section 241.13 governs the detention of noncitizens under a final order of removal where "there is no significant likelihood of removal in the reasonably foreseeable future." § 241.13(b). If the noncitizen was released pursuant to § 241.13, release may be revoked if, "on account of changed circumstances, the Service determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." § 241.13(i)(2).

Further, the regulations governing release provide that, "[u]pon revocation of release," the noncitizen "will be notified of the reasons for revocation of his or her release," and will be given "an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.4(l)(1); 8 C.F.R. § 241.13(i). "The revocation custody review will include an evaluation of

5

any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release." 8 C.F.R. § 241.13(i). Courts examining the requirements for revocation of release following a final order of removal have consistently held that the procedural requirements of notice and an interview are required for revocation of a noncitizen's release. *Constantinovici v. Bondi*, 806 F. Supp. 3d 1155, 1163 (S.D. Cal. 2025) (collecting cases; citations omitted). This Court agrees.

Here, Respondents acknowledge that Petitioner was not provided with notice of the reasons for the revocation of his release "[u]pon revocation" on January 10, 2026. 8 C.F.R. § 241.4(l)(1); 8 C.F.R. § 241.13(i). He was also not provided with an informal interview *promptly* thereafter. *See id.* Instead, Respondents did not provide Petitioner with notice and an informal interview until over six weeks after Petitioner's arrest. Six weeks "cannot reasonably be construed as a 'prompt' informal interview." *Constantinovici*, 806 F. Supp. 3d at 1165 (ordering the respondents to immediately release the petitioner from custody because the respondents violated the INA and the petitioner's Fifth Amendment rights by failing to provide the petitioner with notice of revocation of release at the time of his arrest and failing to hold an informal interview until nearly six weeks after the petitioner's arrest).

Moreover, "even if the government has the discretion to revoke [Petitioner's] supervision, his constitutionally protected liberty interests are implicated by his re-detention." *Villanueva v. Tate*, 801 F. Supp. 3d 689, 704 (S.D. Tex. 2025). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the very liberty that [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690 (citation omitted). The Court finds that Petitioner is entitled to Fifth Amendment due process protections for the reasons set forth in the Court's constitutional analysis in each of the following cases: *Antele Cobix v.*

6

*Raycraft*, No. 1:25-cv-1669, 2025 WL 3562651, at *6–8 (W.D. Mich. Dec. 12, 2025); *Candela Bastidas v. Noem*, No. 1:25-cv-1528, 2025 WL 3562638, at *7–8 (W.D. Mich. Dec. 12, 2025); *Acuna Sanchez v. Noem*, No. 1:25-cv-1442, 2025 WL 3562577, at *7–9 (W.D. Mich. Dec. 12, 2025); *Penagos Robles v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-1578, 2025 WL 3558128, at *6–8 (W.D. Mich. Dec. 12, 2025).

8 C.F.R. § 241.4 and § 241.13, described above, were intended "to provide due process protections to [noncitizens] following the removal period as they are considered for continued detention, release, and then possible revocation of release." *Santamaria Orellana v. Baker*, Civil Action No. 25-1788-TDC, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025). "The opportunity to contest detention through an informal interview is not some ticky-tacky procedural requirement; it strikes at the heart of what due process demands." *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *9 (S.D. Fla. Sept. 9, 2025) (citing *Niz-Chavez v. Garland*, 593 U.S. 155, 172 (2021) ("At one level, today's dispute may seem semantic, focused on a single word, a small one at that. But words are how the law constrains power.")). In its most elemental formulation, "the fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

The Court, therefore, agrees with courts around the country in concluding that the failure to provide Petitioner with notice upon revocation and an informal interview promptly after his detention with a meaningful opportunity to contest the reasons for revocation in accordance with 8 C.F.R. § 241.4 and § 241.13 violates Petitioner's right to due process under the Fifth Amendment and requires release. *See, e.g.*, *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 166 (W.D.N.Y. 2025); *Rombot v. Souza*, 296 F. Supp. 3d 383, 387–88 (D. Mass. 2017); *M.S.L. v. Bostock*, No. 6:25-CV-

01204-AA, 2025 WL 2430267, at *10–12 (D. Or. Aug. 21, 2025); *Roble v. Bondi*, 803 F. Supp. 3d 766, 774 (D. Minn. 2025); *Zhu v. Genalo*, 798 F. Supp. 3d 400, 415 (S.D.N.Y. 2025); *Villanueva*, 801 F. Supp. 3d at 704; *Grigorian*, 2025 WL 2604573, at *9; *Ghafouri v. Noem*, No. 3:25-CV-02675-RBM-BLM, 2025 WL 3085726, at *6 (S.D. Cal. Nov. 4, 2025); *Liu v. Carter*, No. 25-3036-JWL, 2025 WL 1696526, at *3 (D. Kan. June 17, 2025).

## V.    Other Claims and Other Forms of Relief

Because the Court will grant Petitioner's § 2241 petition as set forth herein, the Court does not address other claims and other requested relief in Petitioner's § 2241 petition.

## <u>Conclusion</u>

For the reasons discussed above, the Court will enter a judgment granting Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1.) The Court will order Respondents to release Petitioner from custody, subject to any conditions that existed under Petitioner's Order of Supervision. The Court will also order Respondents to file a status report within three days of the issuance of the Court's opinion and judgment to certify compliance with this opinion and the corresponding judgment.

Dated:   August 7, 2026                         /s/ Paul L. Maloney
                                                 Paul L. Maloney
                                                 United States District Judge

8